1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT H. NESBITT JR.,

11           Plaintiff,              No.  CIV S-03-2243 MCE DAD P

12       vs.

13   NEIL WAKABAYSHI, et al.,        ORDER AND

14           Defendants.             FINDINGS AND RECOMMENDATIONS

15   _____/

16           Plaintiff, an inmate confined in the Solano County Jail, is proceeding pro se with a

17   civil rights action.  Summary judgment has been granted for two defendants.  In these findings

18   and recommendations, the court addresses eleven motions for summary judgment filed by the

19   remaining defendants.

20                    PROCEDURAL HISTORY OF THE CASE

21           Plaintiff commenced this action on October 28, 2003.  His complaint was served

22   on thirteen defendants, who filed their answer on January 13, 2004.  A discovery order was

23   issued on January 20, 2004, and a scheduling order on June 10, 2004.  Twelve defendants joined

24   in a motion to dismiss for failure to exhaust administrative remedies, and all thirteen defendants

25   filed timely motions for summary judgment.  On March 24, 2005, the motion to dismiss was

26   denied, and summary judgment was granted for defendants Headley and Spadaro.  Discovery has

1

1   closed, and the time for filing non-discovery pretrial motions has expired.  Pretrial conference is

2   set for October 21, 2005, and jury trial is set for January 18, 2006.

3                                    PLAINTIFF'S CLAIMS

4                Plaintiff's claims arise from events that occurred in the Solano County Jail in

5   2001.  Plaintiff's allegations are summarized here as background to the court's analysis:

6                On March 26, 2001, Officer Cathleen Brown, now Cathleen Bidou,
            had an argument with inmate Robinson and told him that Officer
7            Matt Bidou would "take care of him" that evening.  At 1:00 a.m.
            on March 27, 2001, Officer Matt Bidou and Officer Eakin began to
8            conduct cell searches in inmate Robinson's housing module, where
            plaintiff was also housed.  Inmates began screaming for Sergeant
9            Marsh, the watch supervisor, because they believed the searches
            were vindictive.  Officers Matt Bidou and Eakin went to cell #9
10           and ordered inmate Harris, an African-American, to leave his cell.
            While the cell was searched by Officer Matt Bidou, Officer Eakin
11           conducted a strip search and cavity search of inmate Harris in the
            day room in full view of all other inmates.  Officers Putnam,
12           James, Gray, and Wakabayashi entered the module when they
            heard inmates screaming for the sergeant.  Officers Matt Bidou and
13           Eakin then searched cell #10, which housed inmate Sozuka, a
            Hispanic male.  Inmate Sozuka was handcuffed and required to sit
14           at a day room table during the search of his cell, but he was not
            strip searched.  When Officer Wakabayashi escorted inmate
15           Sozuka back into his cell, inmate Sozuka complained.  Officer
            Wakabayashi said, "What are you going to do about it?"  Officer
16           Gray pulled Officer Wakabayashi away and told him to stop.
            Officer Matt Bidou then searched cell #11, which housed inmate
17           Robinson, a Hispanic male.  Inmate Robinson was also handcuffed
            and required to sit at a day room table during the search of his cell
18           but was not strip searched.  Inmate Robinson cursed the officers
            when he saw Officer Matt Bidou tearing up his cell and tossing out
19           most of his property.  Officer Matt Bidou said, "That will teach
            you to talk to Officer Brown that way."  Officer Matt Bidou then
20           searched cell #12, which housed inmate Wilson, an African-
            American.  While Officer Matt Bidou searched the cell, officer
21           Eakin conducted a strip search and cavity search of inmate Wilson.
            As a result of the outcry about strip searching only African-
22           American inmates, the officers skipped two cells that housed
            African-Americans.

23
            The officers approached plaintiff's cell and ordered him to strip
24           and submit to a visual cavity search.  Plaintiff submitted to the cell
            search and pulled his pants down, lifted his shirt, and removed his
25           shoes.  Officer Wakabayashi told plaintiff to bend over and cough.
            Plaintiff refused to submit to a visual cavity search on the grounds
26           that the officers were conducting searches solely because of Officer

Cathleen Bidou's argument with inmate Robinson, that they were conducting the searches in a demeaning way, and that they were subjecting only African-American inmates to strip searches and cavity searches. Officers Gray, Putnam, Matt Bidou, Eakin, and Wakabayashi began to form a circle around plaintiff. Plaintiff broke out of the circle and ran up the stairs to the upper tier of the module. Officer Matt Bidou approached plaintiff and said that, if he did not comply with orders, they would make an example of him. Sergeant Marsh was present at this time. Fearful of what might happen, plaintiff began to back away. Plaintiff was chased along the top tier by Officers Matt Bidou and Eakin. When plaintiff reached the end of the top tier, he jumped down to the first tier, entered his cell, and locked himself in. Officers Johnson, Cueva, Wakabayashi, Matt Bidou, James, Eakin, Gray, and Putnam gathered around plaintiff's cell door. Officer Cathleen Bidou was now present and instructed the tower officer to unlock plaintiff's cell from the control tower. When the door opened, plaintiff ran past the officers and upstairs. When he reached the end of the top tier, he turned around. Officer Wakabayashi had run up the stairs behind plaintiff and, with his fists clenched, was screaming obscenities. In self-defense, plaintiff struck Officer Wakabayashi once in the mouth and hit Officer Matt Bidou in the head. Plaintiff was grabbed by Officers James, Wakabayashi, Putnam, Matt Bidou, and Gray and taken to the floor. As plaintiff lay on the floor face down with his hands handcuffed behind his back, Officer Matt Bidou was on top of him and Officer James held his legs. Officer Wakabayashi repeatedly kicked plaintiff in the head while Officers Cathleen Bidou, Matt Bidou, James, Cueva, Gray, Putnam, Eakin, and Johnson watched. Plaintiff was then escorted to the safety cell located on the first floor of the jail. He was stripped by Officers Matt Bidou and James in full view of Officer Cathleen Bidou and another female officer. Plaintiff was left there, bleeding from numerous head injuries.

Sergeant Sylvester, whose names is now Davis, was the supervisor of the safety cell. She entered the cell to check on plaintiff and returned his boxer shorts to him when he asked for them. She took two Polaroid photographs of plaintiff's head injuries. The jail nurse came to the safety cell, examined plaintiff's injuries, and arranged for plaintiff's transfer to a medical facility. Multiple tests were performed at North Bay Medical, and plaintiff received sutures under his left eyelid. Plaintiff suffers from migraine headaches caused by being kicked in the head.

Plaintiff filed grievances and requested an internal affairs investigation into the vindictive cell and strip searches, use of excessive force, placement in the safety cell naked, and conspiracy to cover up the actions of the officers. An internal affairs investigation was conducted. The investigating officer indicated to plaintiff that Officer Matt Bidou had been in trouble before and had been transferred to another facility. When the officer asked

plaintiff if that satisfied his request for an investigation, plaintiff requested that the investigation continue and that all officers be held accountable in order to deter officers from concealing misconduct.

Plaintiff was charged with assault and battery on a custodial officer.  Plaintiff initially proceeded pro se.  When he sought the photographs of his injuries, it was discovered that Sergeant Davis had not given the photographs to the sheriff's deputy who took the crime report.  Plaintiff asked Sergeant Campbell to talk to Sergeant Davis about the photographs.  Sergeant Davis told Sergeant Campbell that she had given the photographs to Officer Matt Bidou.  Officer Matt Bidou told Sergeant Campbell that Sergeant Davis had never given him any photographs.  After plaintiff's pro se status was revoked, plaintiff's attorney also requested the photographs, to no avail.  Counsel obtained an order to compel production of the photographs, but the photographs were not produced.  Sergeant Campbell, Sergeant Davis, and Officer Matt Bidou were subpoenaed concerning the whereabouts of the photographs.  Minutes before the discovery matter was to be heard, the district attorney requested and obtained a continuance.  One week later, the district attorney moved to dismiss the charges against plaintiff on the grounds of "irreconcilable discovery complications" and "insufficient evidence."  Plaintiff stated in court that he believed the case was being dismissed because the district attorney was attempting to cover up officer misconduct.

(Compl., Attachs. at 1-7.)

Plaintiff's complaint identifies eight claims for relief.  The fifth claim concerns only defendant Headley, whose motion for summary judgment has been granted.  Summary judgment has been granted for defendant Spadaro, who was one of nine defendants named in plaintiff's first claim.  The claims that remain are summarized below:

Claim 1.  Defendants Putnam, James, Matt Bidou, Cueva, Johnson, Cathleen Bidou, Eakin, and Gray failed to intervene to prevent the misuse of force or conspired not to report the misuse of force, acting maliciously and sadistically and subjecting plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

Claim 2.  Defendants James, Matt Bidou, and Wakabayshi used physical force against plaintiff without need or provocation, acting maliciously and sadistically, subjecting plaintiff to cruel and unusual punishment and committing the tort of assault and battery.

Claim 3.  Defendants Matt Bidou and James acted maliciously and sadistically when they stripped plaintiff naked in the presence of

4

women officers and placed plaintiff naked in a safety cell without
need or provocation, subjecting him to cruel and unusual
punishment in violation of the Eighth Amendment.

Claim 4.  Defendant Davis, in her official capacity as watch
supervisor, allowed officers to strip plaintiff naked and place him
in the safety cell without need or provocation, acting maliciously
and sadistically and subjecting plaintiff to cruel and unusual
punishment in violation of the Eighth Amendment.

Claim 6.  Defendants Matt Bidou and Davis refused to turn over
the pictures of plaintiff's injuries and conspired to cover up the
misuse of force by officers, thereby violating plaintiff's rights
under the Fourteenth Amendment.

Claim 7.  Defendant Marsh failed to respond to or properly
supervise the incident, violating plaintiff's rights.

Claim 8.  Defendants Matt Bidou, Cathleen Bidou, Eakin, and
Marsh conspired to retaliate against inmates under the guise of cell
and strip searches which were carried out vindictively, in violation
of plaintiff's rights under the Eighth Amendment.

(Id., Attachs. at 8-9.)

STANDARDS APPLICABLE TO MOTIONS BROUGHT PURSUANT TO RULE 56

Summary judgment is appropriate when it is demonstrated by a party that "there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  A party may seek summary judgment upon all or any part

of another party's claims.  Id.

The moving party

always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes
demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.

1    Summary judgment should be entered, after adequate time for discovery and upon

2  motion, against a party who fails to make a showing sufficient to establish the existence of an

3  element essential to that party's case and on which that party will bear the burden of proof at

4  trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

5  nonmoving party's case necessarily renders all other facts immaterial."  Id.  Summary judgment

6  should be granted "so long as whatever is before the district court demonstrates that the standard

7  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

8    If the moving party meets its initial responsibility, the burden shifts to the

9  opposing party to establish that a genuine issue as to any material fact does exist.  Matsushita

10  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

11  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

12  of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or

13  admissible discovery material in support of the contention that a dispute exists.  Fed. R. Civ. P.

14  56(e); Matsushita, 475 U.S. at 586 n.11.

15    The party opposing summary judgment must show that any fact in contention is

16  material, i.e., a fact that might affect the outcome of the suit under the governing law, and that

17  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

18  the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); T.W. Elec. Serv. v.

19  Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Wool v. Tandem Computers,

20  818 F.2d 1433, 1436 (9th Cir. 1987).  In trying to establish the existence of a factual dispute, the

21  party opposing summary judgment need not establish a material issue of fact conclusively in his

22  or her favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge

23  to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

24  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

25  order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting

26  Fed. R. Civ. P. 56(e) Advisory Comm. note on 1963 amends.).

1    The evidence of the party opposing summary judgment is to be believed, and all

2 reasonable inferences that may be drawn from the facts placed before the court must be drawn in

3 favor of the party opposing summary judgment. Anderson, 477 U.S. at 255; Matsushita, 475

4 U.S. at 587. Inferences will not be drawn out of the air, however; it is the opposing party's

5 obligation to produce a factual predicate from which an inference may be drawn. Richards v.

6 Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

7 (9th Cir. 1987). The opposing party "must do more than simply show that there is some

8 metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not

9 lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

10 Matsushita, 475 U.S. at 587 (citation omitted).

11    By order filed December 5, 2003, plaintiff was advised of the requirements for

12 opposing a motion for summary judgment brought by a defendant pursuant to Rule 56. See Rand

13 v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409,

14 411-12 (9th Cir. 1988).

15    LAW APPLICABLE TO PLAINTIFF'S CONSTITUTIONAL CLAIMS

16    Plaintiff seeks relief under the Civil Rights Act, 42 U.S.C. § 1983 and under state

17 law. Section 1983 of the Civil Rights Act provides that

18       [e]very person who, under color of [state law] . . . subjects, or
         causes to be subjected, any citizen of the United States . . . to the
19       deprivation of any rights, privileges, or immunities secured by the
         Constitution and laws, shall be liable to the party injured in an
20       action at law, suit in equity, or other proper proceeding for redress.

21 42 U.S.C. § 1983. To prevail on his § 1983 claims, plaintiff must prove two essential elements:

22 (1) he was deprived of a right secured by the Constitution or laws of the United States and (2) the

23 deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S.

24 42, 48 (1988); Redman v. County of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991).

25    Section 1983 requires an actual connection or link between the conduct of each

26 defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v.

1    Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A

2    person 'subjects' another to the deprivation of a constitutional right, within the meaning of

3    § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to

4    perform an act which he is legally required to do that causes the deprivation of which complaint

5    is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Supervisory personnel are

6    generally not liable under § 1983 for the actions of their employees under a theory of respondeat

7    superior and therefore when a named defendant holds a supervisorial position the causal link

8    between the defendant and the claimed violation of federal law must be specifically alleged and

9    proved. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d

10   438, 441 (9th Cir. 1978).

11           In this case, plaintiff alleges that three defendants misused force (claim 2), eight

12   defendants failed to intervene to prevent the misuse of force or conspired not to report it (claim

13   1), a supervisory defendant failed to respond or properly supervise the officers involved in the

14   incident (claim 7), two male defendants stripped plaintiff in the presence of women officers and

15   placed plaintiff naked in the safety cell without need or provocation (claim 3), a supervisory

16   defendant allowed the male defendants to strip plaintiff and place him in the safety cell (claim 4),

17   two defendants refused to turn over the photographs of plaintiff's injuries and conspired to cover

18   up the misuse of force (claim 6), and the misuse of force occurred after four defendants conspired

19   to retaliate against inmates by performing vindictive cell and strip searches (claim 8). In claims

20   1, 2, 3, 4, and 8, plaintiff asserts that the defendants violated his Eighth Amendment rights. In

21   claim 6, plaintiff asserts that the defendants violated his Fourteenth Amendment rights. In claim

22   7, plaintiff does not cite a specific constitutional provision.

23           Plaintiff was a pretrial detainee at the relevant times. Because he was not a

24   convicted prisoner at those times, his claims do not arise under the Eighth Amendment. See Bell

25   v. Wolfish, 441 U.S. 520, 535 n.16 (1979) (the Eighth Amendment prevents the imposition of

26   cruel and unusual punishment on convicted prisoners); Jones v. Johnson, 781 F.2d 769, 771 (9th

Cir. 1986) (the Eighth Amendment applies only to convicted prisoners).  When a person has been arrested but has not been convicted of a crime, "his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment."  Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002).  It is the more protective Fourteenth Amendment that sets the standards applicable to a pretrial detainee's conditions of confinement.  Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987) (citing Youngberg v. Romeo, 457 U.S. 307 (1982), and Bell, 441 U.S. 520).

Simply put, pretrial detainees "possess greater constitutional rights than prisoners."  Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992).  The Ninth Circuit recently observed that the Fourteenth Amendment "requires the government to do more than provide the 'minimal civilized measure of life's necessities' for non-convicted detainees." Jones v. Blanas, 393 F.3d 918, 931(9th Cir. 2004) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), pet. for cert. filed, No. 04-1609, 73 U.S.L.W. 3710 (May 25, 2005).  At a minimum, "the Fourteenth Amendment prohibits all punishment of pretrial detainees."  Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004), cert. denied, ___ U.S. ___, 125 S. Ct. 2961 (2005).  See Bell, 441 U.S. at 535 (when the state detains a person on a criminal charge, that person, unlike one convicted of a crime, "may not be punished prior to an adjudication of guilt in accordance with due process of law").

The prohibition against punishment of pretrial detainees extends to actions that "amount to punishment."  Id. at 536.  A particular action will not amount to prohibited punishment unless it causes the detainee to suffer some harm or disability.  Id. at 538.  Harm suffered by a pretrial detainee may constitute unconstitutional punishment even if the harm itself is not independently cognizable as a separate constitutional violation.  Demery, 378 F.3d at 1030. However, "the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement."  Id.  Loss of freedom of choice and diminished privacy are examples of inherent incidents of confinement.  Bell, 441 U.S.

at 537.  The mere fact that detention interferes with a detainee's "desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"  Id.

A pretrial detainee may demonstrate that an action was unconstitutionally punitive by showing that the action was expressly intended to punish or that the action served an alternative, non-punitive purpose but was "'excessive in relation to the alternative purpose.'"  Demery, 378 F.3d at 1028 (quoting Bell, 441 U.S. at 538).  A challenged action that is reasonably related to a legitimate government goal, such as effective management of the jail or maintenance of internal jail security and order, will not, without more, constitute punishment.  Bell, 441 U.S. at 539-40, 546; Redman, 942 F.2d at 1440-41; White v. Roper, 901 F.2d 1501, 1504 (9th Cir. 1990).  "Conversely, a court may infer an intent to punish when there is no such reasonable relation."  White, 901 F.2d at 1504 (citing Bell, 441 U.S. at 540).  "'Retribution and deterrence are not legitimate nonpunitive governmental objectives.'"  Id. at 1504-05 (quoting Bell, 441 U.S. at 539 n.20).

Although the Fourteenth Amendment protects pretrial detainees from the use of force that amounts to punishment, it is "the Fourth Amendment [that] sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention."  Gibson, 290 F.3d at 1197 (quoting Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir. 1996)).  The Fourth Amendment standard is one of "objective reasonableness."  Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003) (citing Pierce, 76 F.3d at 1043).  "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Graham v. Connor, 490 U.S. 386, 397 (1989).

In applying the Fourth Amendment reasonableness standard, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."  Graham, 490 U.S. at 396 (internal

1    quotation marks and citations omitted).  "This analysis requires 'careful attention to the facts and

2    circumstances in each particular case, including the severity of the crime at issue, whether the

3    suspect poses an immediate threat to the safety of the officers or others, and whether he is

4    actively resisting arrest or attempting to evade arrest by flight.'"  Gibson, 290 F.3d at 1197

5    (quoting Graham, 490 U.S. at 396).  Put another way, the question of whether force is reasonable

6    under the Fourth Amendment is judged by the totality of the circumstances.  Id. (citing Tennessee

7    v. Garner, 471 U.S. 1, 8-9 (1985)).  The court must "examine the circumstances underlying a

8    Fourth Amendment claim from the viewpoint of the reasonable officer on the scene, 'rather than

9    with the 20/20 vision of hindsight,'" and must allow for the fact that "'officers are often forced to

10   make split-second judgments–in circumstances that are tense, uncertain, and rapidly

11   evolving–about the amount of force that is necessary in a particular situation.'"  Id. at 1197-98

12   (quoting Graham, 490 U.S. at 396-97).

13          The Ninth Circuit has cautioned that "this balancing 'nearly always requires a jury

14   to sift through disputed factual contentions, and to draw inferences therefrom'" and that

15   "'summary judgment or judgment as a matter of law in excessive force cases should be granted

16   sparingly.'"  Lolli, 351 F.3d at 415-16 (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir.

17   2002)).  To defeat summary judgment, a pretrial detainee need only show that a reasonable jury

18   could find that the officers' use of force was excessive.  Id. at 416 (citing Margolis v. Ryan, 140

19   F.3d 850, 852 (9th Cir. 1998)).

                                             ANALYSIS

20

21   I.  Preliminary Matters

22          A.  Requests for Judicial Notice

23          Each defendant has requested judicial notice of a copy of plaintiff's complaint.

24   Many defendants have also requested judicial notice of copies of declarations filed by co-

25   defendants.  A court may take judicial notice of matters of public record, including the court's

26   own files from other cases, documents filed in other courts, and the records and reports of

1  administrative bodies.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986);

2  Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986); United States v.

3  Wilson, 631 F.2d 118, 119 (9th Cir. 1980).  It is unnecessary to request judicial notice of

4  documents filed in this action because such documents are already part of the record and will be

5  considered by the court.

6          Plaintiff has requested judicial notice of the declarations of inmates Mack West

7  and Joseph Tiegen, the declaration of defendant Spadaro, inmate grievances alleging threats and

8  excessive force by defendant Matt Bidou prior to March 27, 2001, excerpts from four interviews

9  taken during the internal affairs investigation, notes from the district attorney's file for the case

10  brought against plaintiff for alleged assault and battery, the transcription of radio

11  communications within the Solano County Jail on March 27, 2001, and relevant medical records.

12  These documents, except for the previously filed declaration of defendant Spadaro, are contested

13  exhibits that are not readily capable of judicial notice pursuant to the Federal Rules of Evidence.

14  See Fed. R. Evid. 201(b).  Plaintiff's documents will be considered for their evidentiary value.

15          B.  Objections to Evidence

16          Defendants have filed detailed and extensive formal objections to plaintiff's

17  evidence.  It would be an abuse of discretion to refuse to consider evidence offered by the pro se

18  plaintiff for the purpose of avoiding summary judgment.  See Jones, 393 F.3d at 935 (reversing

19  and remanding with instructions to consider evidence offered by the pro se plaintiff in his

20  objections to findings and recommendations); Johnson v. Meltzer, 134 F.3d 1393, 1399-400 (9th

21  Cir. 1998) (reversing and remanding for consideration of the pro se plaintiff's verified motion as

22  an affidavit in opposition to summary judgment).  In order to survive a motion for summary

23  judgment, a pro se party is not required to produce evidence in a form that will be admissible at

24  trial and need only offer evidence that may be transformed into admissible evidence at trial.

25  Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003), cert. denied sub nom. U.S. Bancorp

26  v. Fraser, 541 U.S. 937 (2004) (holding that the district court properly considered a diary which

1   defendants moved to strike as inadmissible hearsay because "[a]t the summary judgment stage,

2   we do not focus on the admissibility of the evidence's form.  We focus instead on the

3   admissibility of its contents").  Defendants' objections are overruled for present purposes.

4            C.  Defendants' Request for Clarification and Reconsideration Regarding Replies

5            Defendants Matt Bidou, Wakabayashi, and James have filed a request for

6   clarification and reconsideration of the court's July 20, 2005 order denying their application to

7   file replies to oppositions filed by plaintiff subsequent to June 27, 2005.

8            Defendants' request is predicated in part on the erroneous premise that plaintiff

9   filed untimely opposition to their motions.  Pursuant to the court's March 21, 2005 order,

10  plaintiff was required to file and serve his opposition to the motions on or before June 17, 2005.

11  Each document filed in opposition to these motions was accompanied by a proof of service

12  reflecting that the document was placed in the mail on or before June 17, 2005.  Pursuant to the

13  mailbox rule, and in the absence of a sufficient evidentiary showing to the contrary, the court

14  accepts plaintiff's proofs of service as correct.

15           On June 30, 2005, the clerk filed document #414, consisting of plaintiff's

16  statement of disputed facts and declaration in opposition to defendant Wakabayashi's summary

17  judgment motion.  Plaintiff's response to defendant Wakabayashi's statement of undisputed

18  facts, docketed as #413, had been received for filing on June 22, 2005.  Plaintiff did not submit a

19  memorandum of points and authorities or a request for judicial notice in opposition to defendant

20  Wakabayashi's motion.  Although plaintiff's declaration includes a cover page for Exhibit F, the

21  exhibit is missing.  Defendants' counsel states in a declaration filed June 23, 2005, that she

22  received plaintiff's declaration, with Exhibit F missing, and a separate statement of disputed

23  facts, i.e., the document docketed as #414, on June 21, 2005, and received plaintiff's response to

24  defendant Wakabayashi's statement of undisputed facts, i.e., the document docketed as #413, on

25  June 22, 2005.  Thus, the reply documents filed by defendant Wakabayashi on June 23, 2005,

26  docketed as #401, 402, 403, and 404, were responsive to all documents filed by plaintiff in

13

opposition to defendant Wakabayashi's motion.  The application for leave to file a further reply was denied because defendant's counsel received all of plaintiff's documents on or before June 27, 2005, and filed a reply.

All of plaintiff's documents in opposition to defendant James' summary judgment motion were filed on or before June 27, 2005:  plaintiff's declaration filed June 21, 2005, and docketed as #396; his statement of disputed facts filed June 22, 2005, and docketed as #405; and his memorandum of points and authorities filed June 27, 2005, and docketed as #408.  The court did not receive a response to defendant James' statement of undisputed facts or a request for judicial notice, and Exhibit B is missing from plaintiff's declaration.  Defendants' counsel states in a declaration filed June 23, 2005, that she received plaintiff's declaration, with Exhibit B missing, on June 21, 2005, and his statement of disputed facts on June 22, 2005, as well as a response to defendant James' statement of undisputed facts that has not been filed with the court.  The reply documents filed by defendant James on June 23, 2005, docketed as #398, 399, 400, and 402, were therefore responsive to all documents filed by plaintiff in opposition to defendant James' motion, except for the memorandum of points and authorities received for filing on June 27, 2005.  The application for leave to file a further reply was denied because defendant's counsel received all but one of plaintiff's documents on or before June 27, 2005, filed a reply to all documents except the memorandum of points and authorities, only sought leave to file a reply to documents filed subsequent to June 27, 2005, and failed to show that a reply to plaintiff's points and authorities was necessary.

All of plaintiff's documents in opposition to defendant Matt Bidou's summary judgment motion were filed on June 27, 2005:  plaintiff's memorandum of points and authorities docketed as #409, response to defendant Matt Bidou's statement of undisputed facts docketed as #410; statement of disputed facts docketed as #411; and declaration docketed as #412.  The application for leave to file a reply was denied because defendant requested leave to file a reply

/////

14

1   to documents filed subsequent to June 27, 2005 and did not show cause for the delay in seeking

2   leave to file a reply out of time.

3   II.  Claims Against Defendants Davis and Marsh in Their Official Capacity

4           Defendants Davis and Marsh assert that plaintiff's claims against them in their

5   official capacities are without merit.  Defendants argue that a suit against an individual in his or

6   her official capacity is tantamount to a suit against the public entity itself and that § 1983

7   imposes liability upon municipalities only for constitutional deprivations resulting from actions

8   taken pursuant to government policy or custom.  Defendants contend that plaintiff has not alleged

9   that any government policy or custom resulted in the violation of his rights.

10          Because official-capacity suits generally represent only another way of pleading

11  an action against an entity of which an officer is an agent, suits against officials in their official

12  capacity should, as a rule, be treated as suits against the entity.  Hafer v. Melo, Jr., 502 U.S. 21,

13  25 (1991) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985), and Monell v. New York City

14  Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)).  However, under Ex parte Young, 209 U.S.

15  123 (1908), a government official sued for injunctive relief in his or her official capacity will

16  constitute a person under § 1983 because an official-capacity action for prospective relief is not

17  treated as an action against the government.  Will v. Michigan Dep't of State Police, 491 U.S. 58,

18  71 n.10 (1989); Graham, 473 U.S. at 167 n.14.  Where a complaint against government officials

19  is silent as to the defendants' capacity, the plaintiff's claims for damages may be presumed to be

20  claims against the officials in their individual capacities because suits for damages against

21  government officials in their official capacities are barred.  Shoshone-Bannock Tribes v. Fish &

22  Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994).

23          In this case, plaintiff has expressly sued defendants Davis and Marsh in their

24  individual and official capacities.  (Compl., Attach. at 1A, 8 & 9.)  He seeks compensatory and

25  punitive damages together with a declaratory judgment that these defendants' past actions

26  violated his rights.  (Id. at 9-11.)  Plaintiff does not seek prospective relief from defendant Davis

15

1    or defendant Marsh.  In addressing plaintiff's requests for leave to amend his complaint after the

2    defendants filed their motions for summary judgment, the undersigned found that plaintiff's

3    original complaint does not identify a governmental entity as a defendant and contains no

4    allegations concerning policy or policymakers.  Plaintiff's request for leave to amend was denied

5    because the proposed amended complaint fails to demonstrate that the alleged violations resulted

6    from defendants' execution of an official policy or custom, or from a widespread custom or

7    practice.  (Order filed Apr. 11, 1005, at 6-8.)  Because plaintiff is not proceeding on policy or

8    practice claims and does not seek prospective relief from defendants Davis and Marsh, these

9    defendants are entitled to summary judgment on plaintiff's official-capacity claims.

10    III.  <u>Claims Governed by Fourth Amendment Standards (Claims 1, 2, and 7)</u>

11            Defendants James, Matt Bidou, and Wakabayashi assert that there are no triable

12    issues of fact as to plaintiff's claim that they misused force against him.  Defendants James and

13    Matt Bidou also assert, as do defendants Putnam, Cueva, Johnson, Cathleen Bidou, Eakin, and

14    Gray, that there are no triable issues of fact as to plaintiff's claims that they failed to intervene to

15    prevent the misuse of force or conspired not to report the misuse of force.  Defendant Marsh

16    asserts that there are no triable issues of fact as to plaintiff's claim that he refused to respond to

17    or properly supervise the incident.  Defendants assert, in the alternative, that they are entitled to

18    qualified immunity.

19            As required by Local Rule 56-260(b), plaintiff has reproduced the itemized facts

20    in each defendant's statement of undisputed facts, has admitted facts that are undisputed, has

21    denied facts that are disputed, and has included with each denial a citation to documents relied

22    upon in support of the denial.  Plaintiff has also submitted a separate statement of disputed facts,

23    with the source thereof in the record, of all additional material facts as to which there is a genuine

24    issue precluding summary judgment for the defendants involved in claims 1, 2, and 7.  Plaintiff

25    has offered extensive documentary evidence.

26    /////

16

The parties' arguments and evidence demonstrate that there are numerous disputed issues of fact regarding such material matters as defendant Cathleen Bidou's interaction with defendant Matt Bidou concerning the conflict with inmate Robinson on March 26, 2001, defendant Matt Bidou's reasons for conducting cell searches and strip searches in inmate Robinson's module in the middle of the night, whether defendant Marsh authorized the search of one or more cells and, if so, when he authorized the search or searches and what limitations he imposed on such actions, when defendant Marsh arrived in the module and what he did, if anything, to supervise the incident involving plaintiff's refusal to strip and submit to a cavity search, the actions of the three defendants who forced plaintiff to the floor, whether the force used in forcing plaintiff to the floor was excessive, whether any defendant continued to use force after plaintiff was subdued, the locations and actions of all other defendants in the module when plaintiff was forced to the floor, whether any defendant in the module could have intervened to prevent any misuse of force that occurred, the extent of plaintiff's injuries, and what happened to the photographs of plaintiff's injuries.

It is not surprising that many of the disputed issues of fact arise  from contradictions between the defendants' current declarations, on the one hand, and plaintiff's testimony and the declarations of his inmate witnesses, on the other.  It is more surprising that many disputed issues of fact arise from significant contradictions between the defendants' current declarations and their own previous statements and reports as well as the statements and reports of other defendants and non-defendants.

The undersigned will note examples typical of the material issues in dispute.  In a declaration in support of her motion for summary judgment, defendant Cathleen Bidou denies saying she would have Matt Bidou "take care" of inmate Robinson, denies conspiring to have cell and strip searches performed in inmate Robinson's housing module, denies chasing plaintiff during the incident, and denies giving any orders at the time of the incident.  In his internal affairs interview, defendant Matt Bidou stated that he and Cathy Brown, now Cathleen Bidou,

1   were living together and she told him "about what happened" that morning.  Inmate Joseph

2   Tiegen declares that he saw and heard the argument between inmate Robinson and defendant

3   Cathleen Brown and heard the defendant tell inmate Robinson that "Matt Bidou would take care

4   of him tonight."  Inmate Mack West declares that he heard Matt Bidou tell inmate Robinson as

5   he escorted him back to his cell after tearing his cell up that night, "That should teach you a

6   lesson."  Plaintiff testified during his deposition that he caught only the end of this remark but

7   specifically heard the word "Brown," referring to Cathleen Bidou.  Defendant Spadaro's incident

8   report states that it was Officer Brown, now Cathleen Bidou, who called for the door to cell 14 to

9   be opened after plaintiff jumped from the upper tier and ran in his cell, that Officer Brown, now

10  Cathleen Bidou, was one of the officers who approached plaintiff on the second tier the second

11  time he ran upstairs, and that, after defendant James took hold of plaintiff by the waist, "all other

12  officers" took plaintiff to the ground.

13          With regard to defendant Marsh's approval of the searches, his instructions

14  concerning the scope of the searches, and his supervision of the incident, defendant Marsh

15  declares that he authorized a cell search because defendant Matt Bidou reported smelling pruno,

16  that additional cell searches as well as strip searches were authorized after contraband was found,

17  and that strip searches were to be limited to inmates whose cells contained contraband.

18  Defendant Marsh seeks qualified immunity in part on the grounds that the cell searches were

19  properly authorized and he was not present when plaintiff was allegedly kicked in the head.

20  Defendant Matt Bidou stated during his internal affairs interview that he did not get authorization

21  from defendant Marsh before he started doing cell searches and that he and defendant Eakin strip

22  searched every inmate.  During his internal affairs interview, defendant Eakin stated that "[w]hen

23  we got to Nesbitt's cell, Officer Bidou then stated he wanted Nesbitt strip searched."  Defendant

24  Marsh stated during his internal affairs interview that he went to the module but left to respond to

25  an incident on the second floor, then returned to the fourth floor at some point and "told the guys,

26  'Hey, we gotta strip search this guy.'"  Defendant Spadaro's incident report states that defendant

1  Matt Bidou called for defendant Marsh to assist after plaintiff ran up the stairs the first time and

2  that defendant Marsh arrived and observed the remainder of the incident.  In reply to plaintiff's

3  opposition to defendant Marsh's motion for summary judgment, defendant Marsh offers a

4  declaration by defendant Spadaro executed on June 3, 2005, stating that he does not know

5  whether defendant Marsh was present after plaintiff bolted out of his cell and ran to the upper tier

6  the second time.  Also in reply to plaintiff's opposition, defendant Marsh offers a further

7  declaration in which he explains that a strip search does not include a cavity search but the

8  inmate is told to squat and cough in order to dislodge anything that might be hidden in the

9  inmate's anal cavity, that he did not authorize cavity searches on March 27, 2001, and has never

10  authorized a cavity search during his career.  Plaintiff offers his own testimony and the

11  declaration of inmate Mack West to show that African-American inmates were strip-searched

12  and inmates of other ethnicity were not, that the strip searches of African-American inmates

13  preceded the searches of their cells and any discovery of contraband, and that strip searches were

14  not performed on inmates who were not African-American even when contraband was found in

15  their cells.  Inmate Mack West declares that defendant Marsh was present when plaintiff was

16  taken down.

17         The many disputed issues of material fact render it impossible for the court to

18  determine whether the defendants' actions were objectively reasonable in light of the facts and

19  circumstances confronting them.  A jury could conclude that the intrusion on plaintiff's Fourth

20  Amendment interests, gauged by the type and amount of force inflicted, exceeded that required

21  by the circumstances.  Kicking a pretrial detainee in the head after he has been forced to the

22  ground and handcuffed is not a minimal intrusion.  See Headwaters Forest Def. v. County of

23  Humboldt, 211 F.3d 1121, 1132 n.5 (9th Cir. 2000) (finding that a jury could find that the

24  severity of intrusion by pepper spray was more than minimal), vacated on other grounds by

25  County of Humboldt v. Headwaters Forest Def., 534 U.S. 801 (2001).  As the Ninth Circuit has

26  observed, "where there is no need for force, any force used is constitutionally unreasonable."

1  211 F.3d at 1133.  See also Robinson v. Solano County, 278 F.3d 1007, 1014-15 (9th Cir. 2002)

2  (en banc) (holding that officers' use of drawn gun at close range, pointed at the head of an

3  unarmed misdemeanor suspect, was excessive force where no factors justifying use of force were

4  present).

5          A jury could conclude that the countervailing governmental issues at stake were

6  important, but only up to a point.  The officers may have had some concern for their own safety,

7  and possibly plaintiff's, while plaintiff was racing up and down the stairs and in and out of his

8  cell, and such concern would clearly have been reasonable after plaintiff was cornered and struck

9  two officers while his arms were flailing about.  However, at all times there were many officers

10 present, and a supervisor was present during the entire incident or most of it.  Despite the fact

11 that plaintiff continued to try to avoid being searched, the officers' concern for their safety and

12 the security of the jail was greatly diminished by the presence of so many officers in a small area

13 in which all other inmates were secured in their cells and the doors to the module had been

14 secured by the officer in the control tower.  No reasonable officer on the scene could have

15 thought it was necessary to continue using force on plaintiff after he was face down on the floor

16 with his hands handcuffed behind his back.  It is not evident that any countervailing

17 governmental interests were at stake after plaintiff was subdued.

18         Although plaintiff has not established with precision the location of all ten

19 defendants from minute to minute, he has presented ample evidence from which a jury could

20 infer that the three officers who had physical contact with plaintiff participated in the misuse of

21 force and that defendants James, Matt Bidou, Putnam, Cueva, Johnson, Cathleen Bidou, Eakin,

22 and Gray, or some of them, failed to intervene to prevent the misuse of force by defendant

23 Wakabayashi after plaintiff was handcuffed.  Plaintiff has not merely asserted a group liability

24 theory.  Cf. Jones v. Williams, 297 F.3d 930, 936 (9th Cir. 2002) (concluding that evidence that

25 officers were among those inside a house was not enough to support a group liability jury

26 instruction in an unreasonable search case).  Plaintiff's evidence is sufficient to create the

1   inference that each defendant participated in the use of excessive force, permitted the use of

2   excessive force, or failed to intervene to prevent the use of excessive force by others.  On the

3   basis of plaintiff's evidence, which must be believed for purposes of defendants' motions,

4   summary judgment cannot be granted in favor of defendants Putnam, James, Matt Bidou, Cueva,

5   Johnson, Cathleen Bidou, Eakin, Gray, and Wakabayashi on plaintiff's claims that these

6   defendants misused force or failed to intervene to prevent the misuse of force.

7           It is undisputed that defendant Marsh, the supervising officer, was present and

8   observed most of the incident, if not all of it.  A supervisor may be held liable under § 1983 if

9   there is a sufficient causal connection between the supervisor's conduct and the alleged

10  constitutional violation.  Jackson, 268 F.3d at 653.  Supervisors may also be held liable for their

11  acquiescence in a constitutional deprivation.  Cunningham v. Gates, 229 F.3d 1271, 1292 (9th

12  Cir. 2000).  If the subordinate officers' conduct in this case is found to constitute excessive force,

13  defendant Marsh's failure to control these officers may, by extension, subject him to liability.

14          Plaintiff has put forth sufficient evidence to demonstrate that a reasonable trier of

15  fact could conclude that defendants Putnam, James, Matt Bidou, Cueva, Johnson, Cathleen

16  Bidou, Eakin, Gray, Wakabayashi, and Marsh used excessive force, failed to intervene to prevent

17  the use of excessive force, or failed to bring subordinate officers under control in order to avoid

18  the use of excessive force.  While plaintiff's actions warranted some level of intrusion on his

19  Fourth Amendment rights, the location of the incident, the presence of numerous officers and a

20  supervisor, and the fact that plaintiff was on the floor, face down and handcuffed, during the

21  alleged misuse of force all tip the balance in favor of a finding that the jury could reasonably

22  conclude that excessive force was used.

23          To determine whether any of the officers are entitled to qualified immunity, the

24  court must determine whether, taken in the light most favorable to the party asserting injury, the

25  facts alleged show that the officers' conduct violated a constitutional right.  Saucier v. Katz, 533

26  U.S. 194, 201 (2001).  If a violation can be made out, the court must then determine whether the

1  right was clearly established in light of the specific context of the case so that it would be clear to

2  a reasonable officer that his or her conduct was unlawful in the situation he or she confronted.

3  Id.  In this case, if plaintiff's allegations and evidence are believed, the officers' conduct violated

4  plaintiff's Fourth Amendment right to be free from the use of excessive force.  By 1985,

5  reasonable officers were on notice that an unjustified attack on an inmate violates clearly

6  established rights.  Felix v. McCarthy, 939 F.2d 699, 701-02 (9th Cir. 1991).  If plaintiff's

7  version of the facts prevails at trial, there is a reasonable likelihood that the officers will not be

8  entitled to qualified immunity because a reasonable officer in 2001 would have known that it was

9  excessive force to kick an inmate in the head while the inmate lay on the floor, face down, with

10  his hands handcuffed behind his back, held down by three officers.

11           Defendants Putnam, James, Matt Bidou, Cueva, Johnson, Cathleen Bidou, Eakin,

12  and Gray are, however, entitled to dismissal of plaintiff's claim that they conspired not to report

13  the misuse of force.  "[A] § 1983 claim based on allegations of a police cover-up of wrongdoing

14  is not ripe and does not state a cognizable claim unless the defendants' actions obstructed justice

15  by preventing the plaintiff from prevailing in a lawsuit against the alleged wrongdoers."  Herve v.

16  City and County of San Francisco, No. C-03-4699 MMC, 2004 WL 2806165, at *4 (N.D. Cal.

17  Dec. 7, 2004).  Such a claim should be dismissed without prejudice to the re-filing of the claim if

18  the defendants' alleged cover-up renders the plaintiff's remedies against the wrongdoers

19  ineffective.  Delew v. Wagner, 143 F.3d 1219, 1223 (9th Cir. 1998).  See Karim-Panahi v. Los

20  Angeles Police Dep't, 839 F.2d 621, 625 (1988) (holding that a § 1983 claim based on an alleged

21  cover-up of Fourth Amendment violations by officers who falsified facts and destroyed evidence

22  may state a federally cognizable claim if the defendants' actions can be causally connected to a

23  failure to succeed in an action seeking redress for police misconduct).  Because plaintiff has not

24  yet suffered harm as a result of defendants' alleged conspiracy not to report the misuse of force,

25  this component of plaintiff's first claim should be dismissed without prejudice.

26  /////

1    Considering plaintiff's evidence in the light most favorable to him, the

2    undersigned concludes that there are genuine issues of material fact as to plaintiff's excessive

3    force claims and that the defendants are not entitled to qualified immunity on these claims.

4    Plaintiff has met his burden in opposition to summary judgment on claims 1, 2, and 7, except

5    with regard to the alleged conspiracy not to report the misuse of force.

6    IV.  Claims Governed by Fourteenth Amendment Standards (Claims 3, 4, 6 and 8)

7        A.  Stripping Plaintiff and Placing Him in the Safety Cell Naked (Claims 3 and 4)

8    Plaintiff alleges that defendants Matt Bidou and James stripped him in the

9    presence of two women officers and placed him naked in the safety cell without need or

10   provocation and that defendant Davis, in her official capacity, allowed the officers to strip

11   plaintiff naked and place him in the safety cell without need or provocation.

12   The record demonstrates that Solano County Jail has a cell referred to as the safety

13   cell for use in housing inmates who pose a danger to themselves or others.  The cell is located in

14   the booking and receiving area of the jail, which was supervised by defendant Davis on March

15   27, 2001.  Standard procedure called for officers of the same sex as the inmate to conduct a strip

16   search for contraband before placing the inmate in the safety cell.  Upon completion of the strip

17   search, the inmate, if male, is to be given jail issued boxer shorts and a t-shirt.  Defendant Davis

18   authorized the placement of plaintiff in the safety cell on March 27, 2001.  It is undisputed that

19   plaintiff was strip searched by male officers.  The record does not reflect that any contraband was

20   found during the search.

21   Plaintiff's version of the facts does not support his contention that he was placed

22   in the safety cell without need or provocation.  Plaintiff refused to comply with orders, ran up the

23   stairs, jumped from the second tier down to the first, ran in and out of his cell, ran up the stairs

24   again, struck one officer in the face, struck another officer in the head, and was subdued in a

25   melee that left him bleeding from head injuries.  The undisputed facts concerning plaintiff's

26   actions support an inference that plaintiff's placement in the safety cell and the standard strip

1    search in connection with that placement were incidents of the government's legitimate interests

2    in maintaining institutional security and preserving internal order and discipline.

3            The only harm claimed by plaintiff is that he was stripped in the presence of two

4    women officers and placed in the safety cell naked in order to embarrass, demean, and

5    dehumanize him and that the strip search was done for the purpose of punishing him.  Loss of

6    privacy is an inherent incident of confinement and cannot constitute punishment unless the

7    government's action caused a loss that significantly exceeded that inherent in confinement.

8            The privacy rights of both pretrial detainees and prisoners are severely curtailed

9    by their confinement.  United States v. Van Poyck, 77 F.3d 285, 291 & n.10 (9th Cir. 1996)

10   (citing Bell, 441 U.S. at 546).  Prior to 1993, Ninth Circuit case law suggested that up-close,

11   frequent, and intentional viewings by guards of the opposite sex could violate a prisoner's

12   privacy rights.  Grummett v. Rushen, 779 F.2d 491 (9th Cir. 1985); Michenfelder v. Sumner, 860

13   F.2d 328 (9th Cir. 1988); and Sepulveda v. Ramirez, 967 F.2d 1413 (9th Cir. 1992).  In 1993,

14   however, the Ninth Circuit held that "prisoners' legitimate expectations of bodily privacy from

15   persons of the opposite sex are extremely limited" and that, while inmates may have protected

16   privacy interests in freedom from certain cross-gender body searches, such interests had not been

17   judicially recognized.  Jordan v. Gardner, 986 F.2d 1521, 1524-25 (9th Cir. 1993) (en banc).  In

18   1997, the Ninth Circuit considered a male inmate's claim that his Fourth and Eighth Amendment

19   rights were violated when he was subjected to visual body cavity searches by female guards and

20   when female guards watched him showering naked.  Somers v. Thurman, 109 F.3d 614, 616 (9th

21   Cir. 1997).  The court held that the defendants were entitled to qualified immunity because it was

22   "highly questionable even today whether prison inmates have a Fourth Amendment right to be

23   free from routine unclothed searches by officials of the opposite sex, or from viewing of their

24   unclothed bodies by officials of the opposite sex."  Id.  See also Lay v. Porker, 371 F. Supp. 2d

25   1159, 1166 (C.D. Cal. 2004) (holding that a male correctional officer was entitled to qualified

26   immunity against a male prisoner's allegation that the officer subjected him to an intrusive body

24

1  cavity search in 2001 in the presence of a female officer); <u>Carlin v. Manu</u>, 72 F. Supp. 2d 1177,

2  1183 (D. Or. 1999) (holding that male correctional officers were entitled to qualified immunity

3  against allegations of female state prison inmates that their Fourth Amendment rights were

4  violated in 1996 when male guards were allowed to be present and view female inmates during

5  strip searches).

6          In this case, plaintiff complains of a single occasion when he was strip searched

7  by male officers while two female officers were in the vicinity.  Plaintiff has failed to show that

8  his loss of privacy under the circumstances significantly exceeded the loss inherent in

9  confinement or that the strip search conducted in connection with his placement in the safety cell

10  was not reasonably related to the legitimate government goal of maintaining jail security.

11  Moreover, in the absence of a clearly established right to privacy from casual observation, the

12  defendants are entitled to qualified immunity from plaintiff's claims for damages arising from

13  being stripped by male officers in the presence of women officers.  Defendants Matt Bidou,

14  James, and Davis are entitled to summary judgment in their favor with respect to claims 3 and 4

15  of plaintiff's complaint.

16          B.  <u>Refusing to Produce Photographs (Claim 6)</u>

17          Plaintiff's sixth claim is that defendants Matt Bidou and Davis refused to turn

18  over the pictures of plaintiff's injuries and conspired to cover up the misuse of force by officers.

19  Plaintiff alleges as follows:  while representing himself against assault charges, he attempted to

20  obtain through discovery the photographs of his injuries; it was discovered that defendant Davis

21  did not give the photographs to the deputy who took the crime report; plaintiff asked Sergeant

22  Campbell to speak with defendant Davis about the photographs; Sergeant Campbell reported to

23  plaintiff that defendant Davis said she gave the photographs to defendant Matt Bidou but

24  defendant Matt Bidou said she never gave him any photographs, the attorney who subsequently

25  represented plaintiff in the criminal case requested the photographs for use as exculpatory

26  evidence and for a possible self-defense claim; the trial court granted the defense request for an

1   order compelling production of the photographs; counsel subpoenaed Sergeant Campbell and

2   defendants Matt Bidou and Davis after the photographs were not produced; minutes before the

3   hearing regarding the photographs, the prosecution obtained a continuance of the hearing; a week

4   later the prosecution moved to dismiss the case due to irreconcilable discovery complications and

5   insufficient evidence; in court, plaintiff accused the district attorney's office of attempting to

6   sweep the officers' misconduct under the rug.

7           It is undisputed that defendant Davis took two Polaroid photographs of plaintiff,

8   that the photographs were never produced to plaintiff, and that the criminal charges against

9   plaintiff were dismissed at least in part because the photographs could not be located.  Defendant

10  Davis declares that she does not know where the photographs are and denies conspiring with

11  anyone to deprive plaintiff of the photographs or to cover up anything.  She contends that

12  plaintiff has no evidence of any conspiracy regarding the photographs.  Defendant Matt Bidou

13  asserts that he also has no knowledge of the whereabouts of the photographs and contends that

14  plaintiff has no evidence that he conspired to deprive plaintiff of his constitutional rights.

15          In opposition to defendants' motions, plaintiff reiterates the allegations of his

16  complaint and adds that, after his attorney subpoenaed Sergeant Campbell, defendant Davis, and

17  defendant Matt Bidou, defendant Matt Bidou called plaintiff's attorney and said he could explain

18  what happened to the photographs, after which his attorney informed the district attorney of the

19  call and the district attorney concluded that there was no good explanation for the missing

20  photographs.  Plaintiff argues that defendant Matt Bidou and other officers falsified their reports

21  and conspired to have plaintiff criminally prosecuted, although the charges against him were

22  dismissed after the conspiracy was uncovered.

23          In reply, defendant Davis declares that the photographs were taken in part to

24  document that plaintiff was not seriously injured and in part because she presumed photographs

25  would be useful if charges were brought against plaintiff for assaulting officers.  She argues that

26  the loss of the photographs inured to plaintiff's benefit.

Plaintiff has asserted two harms resulting from the alleged refusal to turn over the pictures of his injuries:  (1) he was deprived of the photographs for use as exculpatory evidence and for a possible self-defense claim against the charges of assault; and (2) the disappearance of the photographs served to cover up the misuse of force by officers.  The dismissal of the case against plaintiff served to eliminate plaintiff's need for exculpatory evidence or for evidence supporting a claim of self-defense.  As a result of the dismissal, the defendants' alleged refusal to produce the photographs did not cause plaintiff to suffer any harm with respect to the criminal charges brought against him.  With regard to the second harm, plaintiff's allegation of a cover-up of wrongdoing is not ripe and does not state a cognizable claim at this time because plaintiff has not been prevented from prevailing in a lawsuit against the alleged wrongdoers. Delew, 143 F.3d at 1223; Karim-Panahi, 839 F.2d at 625; Herve, No. C-03-4699 MMC, 2004 WL 2806165, at *4.

In the absence of any evidence that plaintiff has suffered a harm as a result of defendants' alleged refusal to produce the photographs of his injuries, defendants Matt Bidou and Davis are entitled to dismissal of plaintiff's sixth claim without prejudice.

C.  Conspiring to Retaliate with Vindictive Searches (Claim 8)

Defendants Matt Bidou, Cathleen Bidou, Eakin, and Marsh seek summary judgment on plaintiff's claim of retaliatory searches on the grounds that there are no triable issues of fact regarding the claimed violation of plaintiff's constitutional rights and, in the alternative, that they are entitled to qualified immunity.

Defendant Marsh offers evidence that he authorized cell searches after being informed of the potential presence of contraband alcohol in the module and that he subsequently authorized strip searches of inmates whose cells contained contraband.  Defendant Marsh argues that there is no evidence that he conspired with others to retaliate against inmates under the guise of cell and strip searches.  He contends that searching an inmate's cell or person is not a constitutional violation and there was no agreement or meeting of the minds to violate plaintiff's rights by conducting such searches.  He asserts that plaintiff cannot demonstrate that any

27

1   retaliation occurred in response to plaintiff's exercise of a constitutional right or that the alleged

2   retaliatory action did not advance legitimate penological goals of preserving institutional order

3   and discipline.  He argues that plaintiff lacks standing to raise a retaliation claim because plaintiff

4   was a mere bystander to the conflict with inmate Robinson that led to the alleged retaliation.

5   Defendant Marsh argues in conclusion that, if his actions resulted in a violation of any clearly

6   established right of plaintiff's, he is entitled to qualified immunity because it was reasonable to

7   authorize cell searches on the basis of a report that there might be contraband alcohol in the

8   module and it was reasonable to authorized strip searches of inmates found to have any

9   contraband in their cells.  Defendant Eakin, who was a trainee at the time, advances similar

10  arguments, declaring that he joined defendant Matt Bidou in conducting searches pursuant to an

11  order to do so and followed county policy in the manner in which he conducted the searches.

12          Defendant Cathleen Bidou contends that she did not enter into a conspiracy to

13  have the cells of Block C searched and the inmates of that block strip searched, bore no animus

14  or ill will toward any inmates housed in Block C, did not request that searches be conducted, did

15  not order that searches be conducted, and did not participate in the searches.  Defendant Matt

16  Bidou contends that he thought he smelled pruno in the module, requested and received

17  permission to conduct cell searches, and found pruno during the searches.

18          In opposition to defendants' motions for summary judgment on claim 8, plaintiff

19  argues that defendant Cathleen Bidou's conflict with inmate Robinson had extended to all

20  inmates in the module.  He cites defendant Cathleen Bidou's incident report, describing inmate

21  Robinson's refusal to comply with orders on March 26, 2001, at 9:43 a.m. and stating that

22          [Officer] Hayes had to escort Robinson to his cell by placing his
            hands on Robinsons shoulders and guiding him to his cell.  After
23          Robinson was in the cell, he asked for toilet paper and a grievance.
            When I took these items over to his cell the entire mod was
24          encouraging him and yelling "Heres [sic] your chance".  Robinson
            said "Go ahead open the door you bitch I'll put my hands on you".
25          I put the grievance under his door and walked away.

26  (Pl.'s Decl. in Opp'n to Def. M. Bidou's Mot. for Summ. J., Ex. A.)  Plaintiff also cites

28

1  defendant Matt Bidou's statement during his internal affairs interview that defendant Cathleen

2  Bidou, who was then Cathleen Brown and lived with defendant Matt Bidou, worked overtime on

3  the morning of March 26, 2001, and later told defendant Matt Bidou that officers "went hands-on

4  with somebody and had to physically put him back in the cell." (Id., Ex. B.)

5         Plaintiff has cited no evidence from which it can be inferred that defendant Eakin

6  or defendant Marsh had any knowledge of the events that occurred on the morning of March 26,

7  2001, involving defendant Cathleen Bidou and inmate Robinson.  The record contains no

8  evidence that defendant Marsh authorized the searches for the purpose of retaliating against

9  inmate Robinson or all inmates in the module.  Similarly, the record contains no evidence that

10  defendant Eakin, a trainee sent to assist defendant Matt Bidou with cell searches, had any

11  retaliatory purpose for conducting cell searches as ordered.  No reasonable jury could infer from

12  plaintiff's evidence that defendant Marsh or defendant Eakin joined in a conspiracy to retaliate

13  against inmates by carrying out vindictive cell and strip searches on March 27, 2001.

14         It is undisputed that defendant Matt Bidou was informed of the incident involving

15  defendant Cathleen Bidou and inmate Robinson on March 26, 2001.  Although plaintiff has

16  offered some evidence from which it is possible to infer that defendant Matt Bidou had a

17  retaliatory motive for the manner in which he searched inmate Robinson's cell, plaintiff has

18  neither presented nor cited evidence from which it is possible to infer that defendants Matt Bidou

19  and Cathleen Bidou formed a plan to retaliate against inmate Robinson by conducting vindictive

20  cell and strip searches in the module.  During his deposition, plaintiff admitted that he was

21  unaware of any remarks or documentary evidence showing that these defendants conspired to

22  retaliate against and punish all inmates in the module through cell searches carried out

23  vindictively.  (Nesbitt Dep. taken Apr. 27, 2004, at 135-40.)

24         After an adequate time for discovery, plaintiff has failed to demonstrate the

25  existence of a genuine issue of material fact with regard to his claim of retaliatory searches.

26  Plaintiff has failed in his obligation to produce a factual predicate from which any inference

1   might be drawn in his favor.  Plaintiff's mere belief and the metaphysical possibility that

2   defendants Matt Bidou and Cathleen Bidou conspired with each other are insufficient.  The

3   record taken as a whole could not lead a rational trier of fact to find for plaintiff on this claim and

4   there is no genuine issue for trial.  Accordingly, all four defendants are entitled to summary

5   judgment on plaintiff's eighth claim alleging a conspiracy to retaliate with vindictive searches.

6   V.  Summary

7           The court recommends that summary judgment be granted for defendants Putnam,

8   James, Matt Bidou, Cueva, Johnson, Cathleen Bidou, Eakin, and Gray on the allegation in claim

9   1 of a conspiracy not to report misuse of force; for defendants Matt Bidou and James on claim 3;

10  for defendant Davis on claim 4; for defendants Matt Bidou and Davis on claim 6; for defendant

11  Marsh on claim 7 only to the extent that the claim has been brought against the defendant in his

12  official capacity; and for defendants Matt Bidou, Cathleen Bidou, Eakin, and Marsh on claim 8.

13  If this recommendation is adopted, claims 3, 4, 6, and 8 will be resolved, and no claims will

14  remain against defendant Davis.

15          If these findings and recommendations are adopted, the following claims will

16  remain for trial against ten defendants:  claim 1, alleging that defendants Putnam, James, Matt

17  Bidou, Cueva, Johnson, Cathleen Bidou, Eakin, and Gray failed to intervene to prevent the

18  misuse of force by others; claim 2, alleging that defendants James, Matt Bidou, and Wakabayashi

19  misused force and committed assault and battery[1]; and claim 7, alleging that defendant Marsh, in

20

21          [1] Defendant Wakabayashi states that the court "ordered service only on plaintiff's civil rights
22  complaint and not on any pendent state court claims."  (Def. Wakabayashi's Mot. for Summ. J.,
    Mem. of P. & A. at 1 n.1.)  Defendant is in error.  District courts are obligated to screen complaints
23  in civil actions in which prisoners seek redress from a governmental entity or officer of employee
    of a governmental entity.  28 U.S.C. § 1915A(a).  The court is required to dismiss a complaint, or
24  any portion thereof, if the complaint is frivolous, malicious, or fails to state a claim, or seeks
    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  The
25  undersigned determined that "[p]laintiff's civil rights complaint states cognizable claims for relief
    pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b)."  No claims were dismissed from this
26  action at screening.  The court has supplemental jurisdiction over plaintiff's claim that defendants
    James, Matt Bidou, and Wakabayashi committed assault and battery.

1  his individual capacity, failed to respond to or properly supervise the incident in which force was

2  misused.

3                    OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

4                The pro se plaintiff is again advised that his objections must be placed in the mail

5  to the court and defendants' counsel within ten court days after the Clerk of the Court places a

6  copy of the findings and recommendations in the mail to plaintiff.  28 U.S.C. § 636(b)(1); Local

7  Rule 72-304(b).  Plaintiff is reminded that the purpose of filing objections is to call to the

8  attention of the district judge those portions of the findings or recommendations to which the

9  party objects.  The district judge assigned to the case will make a de novo determination as to

10  matters objected to by any party.  The district judge may accept, reject, or modify, in whole or in

11  part, all or portions of the findings or the recommendations.  The objection period is not an

12  invitation to conduct additional discovery or research, or to submit additional briefing or

13  evidence.  No extension of time will be granted for such purposes.

14                Accordingly, IT IS HEREBY ORDERED that:

15                1.  Defendants' requests for judicial notice filed December 6, 2004 (docketed as

16  #115), December 10, 2004 (docketed as #119 and 127), December 15, 2004 (docketed as #134),

17  December 16, 2004 (docketed as #140 and 145), December 27, 2004 (docketed as #158),

18  December 28, 2004 (docketed as #163), January 7, 2005 (docketed as #181, 187, and 195), June

19  15, 2005 (docketed as #363), June 16, 2005 (docketed as #377), and June 23, 2005 (docketed as

20  #402), are denied;

21                2.  Plaintiff's requests for judicial notice filed May 26, 2005 (docketed as #333),

22  May 31, 2005 (docketed as #345), and July 12, 2005 (docketed as #422, 434, and 435), are

23  denied;

24                3.  Defendants' July 21, 2005 application for clarification is granted, and the order

25  filed July 20, 2005, is affirmed; and

26  /////

IT IS RECOMMENDED that:

1. Defendant Cueva's December 6, 2004 motion for summary judgment (docketed as #110) be granted only in part and the conspiracy allegation in claim 1 be dismissed without prejudice;

2. Defendant Putnam's December 10, 2004 motion for summary judgment (docketed as #116) be granted only in part and the conspiracy allegation in claim 1 be dismissed without prejudice;

3. Defendant Johnson's December 10, 2004 motion for summary judgment (docketed as #122) be granted only in part and the conspiracy allegation in claim 1 be dismissed without prejudice;

4. Defendant Gray's December 15, 2004 motion for summary judgment (docketed as #131) be granted only in part and the conspiracy allegation in claim 1 be dismissed without prejudice;

5. Defendant Eakin's December 16, 2004 motion for summary judgment (docketed as #137) be granted only in part, the conspiracy allegation in claim 1 be dismissed without prejudice, and claim 8 be dismissed with prejudice;

6. Defendant Cathleen Bidou's December 16, 2004 motion for summary judgment (docketed as #143) be granted only in part, the conspiracy allegation in claim 1 be dismissed without prejudice, and claim 8 be dismissed with prejudice;

7. Defendant Wakabayashi's December 27, 2004 motion for summary judgment (docketed as #152) be denied;

8. Defendant James' December 28, 2004 motion for summary judgment (docketed as #160) be granted only in part, the conspiracy allegation in claim 1 be dismissed without prejudice, and claim 3 be dismissed with prejudice;

/////

/////

9. Defendant Davis' January 7, 2005 motion for summary judgment (docketed as #177) be granted in full, claim 4 be dismissed with prejudice, and claim 6 be dismissed without prejudice;

10. Defendant Matt Bidou's January 7, 2005 motion for summary judgment (docketed as #184) be granted only in part, the conspiracy allegations in claims 1 be dismissed without prejudice, claim 6 be dismissed without prejudice, and claims 3 and 8 be dismissed with prejudice; and

11. Defendant Marsh's January 7, 2005 motion for summary judgment (docketed as #190) be granted only in part, claim 7 be dismissed with prejudice to the extent that the claim has been brought against the defendant in his official capacity, and claim 8 be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **ten** days after being served with these findings and recommendations, any party may file and serve written objections with the court.  A document containing objections should be entitled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections should be filed and served within ten days after service of objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 17, 2005.

Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
nesb2243.msj11

33